**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIGHT KIDS NYC, INC.; BRIGHT KIDS CHICAGO, INC.; BIGE DORUK; IB OLSEN, MIKE'S AUTO SERVICE, INC., MICHAEL L. PEDERSON, PIM SALONS, LLC D/B/A BEAUTIFUL BRANDS; MARCIA VAN CAMP; DBR CONSTRUCTION; JULIE COX; THE CEDARS OF LEBANON LLC; and THEODORE MONSOUR II, individually and on behalf of all those similarly situated, | Docket No.: |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| KABBAGE, INC., a Delaware corporation; ROBERT FROHWEIN, individually and, KATHRYN PETRALIA, individually, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs DBR Construction, Julie Cox, Bright Kids NYC, Inc., Bright Kids Chicago, Inc., Bige Duruk, Ib Olsen, Mike's Auto Service, Inc., Michael L. Pederson, Pim Salons, LLC d/b/a Beautiful Brands and Marcia Van Camp, The Cedars of Lebanon, LLC, Theodore Monsour, II (collectively "Plaintiffs") hereby bring this Class Action Complaint against Kabbage, Inc. ("Kabbage"), Robert Frohwein and Kathryn Petralia (collectively, "Defendants"). In support, Plaintiffs, individually and on behalf of all those similarly situated, hereby alleges, upon due investigation, and, where stated, due information and reasonable belief, as follows:

## NATURE OF THE ACTION

1. As a matter of their strong public policy, more than a dozen states place limits on the amount of interest that can be charged on business loans.

2.      Plaintiffs are small businesses and their individual owners who have been victimized by Defendants' unscrupulous scheme to evade these state imposed limits through their illegal "rent-a-bank" scheme.

3.      Kabbage is an online digital technology company which provides funding directly to small businesses and consumers through an automated lending platform.

4.      In order to obtain clients for its loans, Kabbage aggressively markets, underwrites and services short-term loans to small businesses in need of quick capital.

5.      These loans often substantially exceed the statutory maximum legal interest rate in violation of state usury laws.

6.      In an effort to hide—and ostensibly legalize—its illegal activities, Kabbage entered into an illegal "rent-a-bank" scheme with Celtic Bank, a foreign state chartered bank in Utah (a state with no maximum interest rate for commercial loans).  *See* Ex. 1.

7.      The enterprise's purpose is to evade the criminal usury laws of states throughout the country, including California, Colorado, Massachusetts and New York.

8.      Under this "rent-a-bank" scheme, Kabbage originates, underwrites, securitizes and funds the loans, and then enters into sham transactions with Celtic Bank, which acts as the lender in name only.  *See e.g., Kabbage Asset Securitization LLC, Series 2017-1, Additional Notes,* attached as Ex. 2.

9.      Thus, in economic reality, Kabbage markets, underwrites, prices, approves, funds, and collects upon 100% of the loans.  It also bears 100% risk of loss.

10.      In contrast, Celtic Bank owns the receivables on paper *for just two-days*, bears zero risk of loss and literally does not lift a finger to service the loan.

11.     From the inception of *every* loan that it originates, Kabbage is contractually obligated to purchase from Celtic Bank 100% of those receivables.

12.     Celtic Bank retains no ownership or monetary interest in the receivables, and therefore, it has absolutely no economic risk of loss due to a borrower's non-payment or subsequent default. *See e.g., Kabbage Asset Securitization LLC, Series 2017-1, Additional Notes,* attached as Ex. 2.

13.     Put another way, Celtic Bank rents its charter to Kabbage in exchange for a commission on loans originated and funded by Kabbage but nominally made under Celtic's name for the purpose of evading state usury laws.  *See* Ex. 3, Hannon, J., *The True Lender Doctrine*: Function Over Form as a Reasonable Constraint on the Exportation of Interest Rates, Duke Law Journal, Vol. 67:1261, 1285 (2018) ("[R]ent-a-charter participants are likely to seize on factors identified by courts applying the true lender doctrine and subsequently attempt to structure the form of their relationships so as to avoid the appearance of sham transactions.").

14.     Due to the volume and risk inherent in high-interest loans, Celtic Bank itself would never be able to make and to keep the loans on its balance sheet because they would create an unacceptable risk under FDIC regulations.

15.     Kabbage, however, willingly approves and takes on these high-risk loans because it charges these small businesses usurious interest rates that are as high as 95% APR.

16.     The result of these high interest rates can be devastating to struggling small businesses in desperate need of capital.  For example, on a $100,000 loan, the most that can be charged per year under New York criminal law is $25,000.  At a 95% APR, Kabbage would be charging a struggling small business $58,547.  That is *double* the amount permitted in Colorado

and New York, nearly triple the amount permitted in Massachusetts, and more than *five times* the amount permitted in California.

17.     In charging these unlawful interest rates, Kabbage itself has repeatedly admitted that the arrangement is a sham and that Kabbage is the true lender.

18.     For example, during a joint webinar presented in partnership with the National Federation of Independent Business, Kabbage's co-founder and COO, Kathryn Petralia, acknowledged that Kabbage is the direct lender:

Question:  "Are you a direct lender?"

Answer:  "**The answer is yes**. We are not a marketplace lender.  We do securitize the receivables that are generated, the loans that are  generated, meaning **we have investors in those loans that <u>we make</u>**, but **Kabbage actually takes the risk of loss**. All of our loans are made in partnership with Celtic Bank, which is a Utah bank regulated by the FDIC."[1]

19.     In another public interview, Petralia admitted:

"We're a little bit different just, again, **because we're a direct lender**. So <u>**we take balance sheet risk**</u>, <u>**we securitize the receivable**</u>. So we don't have the exact same risk because we don't have retail investors. **For us, what happens is rates go up. <u>We</u> pay more. <u>Our customers</u> pay more**. That kind of sucks. But we don't have that same exact kind of platform risk, I think, that folks like Prosper may have."[2]

20.     This type of "rent-a-bank" scheme is illegal and has been the subject of numerous enforcement actions by Attorneys General in different states.

21.     In their letter to the FDIC on January 22, 2019, *ten state attorneys general* decried rent-a-bank schemes that seek to evade their state usury laws, including the state attorneys general for California, Colorado, Massachusetts and New York.  *See* Ex. 5.

---

[1]   *See The Ins and Outs of Online Lending with Kabbage (Webinar Transcript),* Kabbage, https://www.kabbage.com/blog/ins-outs-online-lending-kabbage-co-founder-kathryn-petralia-webinar-transcript/ (last accessed Mar. 10, 2018) (emphasis added); Ex. 4.

[2] *See* https://www.cbinsights.com/research/marketplace-lending-competition-brutal/ (emphasis added).

22.     Through this unlawful scheme, Kabbage has systematically collected usurious interest from small businesses since March 2014 and continues to violate state usury laws today.

23.     In addition to charging unlawful interest rates, the scheme is designed to trap small businesses in a never-ending cycle of debt.

24.     The average Kabbage customer enters into an astonishing *twenty-two loans* with Kabbage over just a four-year period.[3]

25.     When the small businesses that take on these usurious loans are unable to keep up with their debt repayments, Kabbage then sells the debt to TBF Financial, Inc. ("TBF"), a third-party debt collector, who takes over and acts as the collection arm for the criminal enterprise.

26.     As occurred here, this classic "rent-a-bank" scheme typically results in litigation, as TBF sues the borrowers for defaulting on the usurious and predatory Kabbage loans.

27.     Under the controlling law of this Circuit, however, neither Kabbage nor TBF are entitled to federal preemption.  Thus, both are subject to applicable state usury laws.  *See Madden v. Midland Funding, LLC*, 786 F.3d 246, 251-53 (2d Cir. 2015) ("Although national banks' agents and subsidiaries exercise national banks' powers and receive protection under the NBA when doing so, extending those protections to third parties would create an end-run around usury laws for non-national bank entities that are not acting on behalf of a national bank.").

28.     Defendants' rent-a-bank scheme here is precisely the type of sham arrangement the Second Circuit intended to prevent when it decided *Madden*.

29.     Plaintiffs now bring this class action lawsuit to put an end to Defendants' unlawful scheme, and to remunerate the many thousands of similarly situated victims located in California, Colorado, Massachusetts and New York.

---

[3]  *See https://player.fm/series/cb-insights-a-conversation-with-2380182/a-conversation-with-kathryn-petralia-coo-co-founder-of-kabbage.*

## THE PARTIES

30.     Plaintiff Bright Kids NYC, Inc. is a New York corporation located in New York, New York.

31.     Plaintiff Bright Kids Chicago, Inc. is an Illinois corporation located at in New York, New York.

32.     Plaintiff Ib Olsen is a New York citizen and resident located in New York, New York.

33.     Plaintiff Bige Doruk is a New York citizen and resident located in New York, New York.

34.     Plaintiff Julie Cox is citizen and resident of California located in Apple Valley, California.

35.     Plaintiff DBR Construction is a sole proprietorship of Julie Cox located and operated under the laws of California.

36.     Plaintiff Mike's Auto Service, Inc. is a Massachusetts automotive repair business located in Somerville, Massachusetts.

37.     Plaintiff Michael L. Pederson is a resident and citizen of Wakefield, Massachusetts.

38.     Plaintiff Pim Salons, LLC d/b/a Beautiful Brands is a Massachusetts business located in Brighton, Massachusetts.

39.     Plaintiff Marcia Van Camp is a resident and citizen of Westborough, Massachusetts.

40.     Plaintiff The Cedars of Lebanon, LLC is Colorado company located Durango, Colorado.

41.     Plaintiff Theodore Monsour, II, is an individual and resident and citizen of Colorado with a place of residence in Durango, Colorado.

42.     Defendant Kabbage is a limited liability company duly organized and existing under the laws of the State of Georgia, with its principal place of business located at 25B Peachtree Street NE, Suite 1688, Atlanta, GA 30309.

43.     Defendant Robert Frohwein is an individual resident and citizen of Georgia with a principal place of business at 925B Peachtree Street NE, Suite 1688, Atlanta, GA 30309.

44.     Defendant Kathryn Petralia is an individual resident and citizen of Georgia principal place of business at 925B Peachtree Street NE, Suite 1688, Atlanta, GA 30309.

## JURISDICTION

45.     Each Defendant is subject to the personal jurisdiction of this Court because each Defendant regularly transacts business within the State of New York and has purposefully availed itself of the laws of New York for the specific transactions at issue.

46.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than Defendants, (ii) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

47.     The Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 based on Plaintiffs' claims for violations of the Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. §§ 1961–68.

48.     The Court has subject-matter jurisdiction over Plaintiffs' state-law claims because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

49.     Venue is proper because each Defendants regularly conducts business within this judicial district.

## FACTUAL BACKGROUND

### Kabbage "Rents" a Utah Bank to Violate State Usury Laws

50.     Defendants' rent-a-bank scheme began on or around March 20, 2014 when Kabbage entered into a "Program Management Agreement" ("PMA") with Celtic Bank.

51.     Pursuant to the PMA, Celtic Bank agreed to "issue" business loans through the marketing efforts of Kabbage.

52.     Kabbage and Celtic amended their PMA on June 30, 2015.  One of the principle changes to the agreement was that the 5% participation interest that Celtic Bank was retaining in the loan receivables under the original agreement was eliminated.

53.     Under the new agreement, Kabbage was obligated to purchase Celtic Bank's minor participation interest in all outstanding loans and it was required to purchase 100% of the loan receivables on all loans Kabbage originated going forward—*after just two days*.

54.     Thus, as of June 30, 2015, 100% of the economic interest and risk for all loans that were "issued" in Celtic Bank's name was borne by Kabbage who was and is the true lender.

55.     Defendants' rent-a-bank scheme was and is designed for one purpose: to allow third-party lenders like Kabbage to circumvent state usury laws.

56.     Kabbage actually holds itself out as a direct lender notwithstanding its false claims that the loans are "issued" by Celtic Bank.

57.     As pled above, during a joint webinar presented in partnership with the *National Federation of Independent Business*, Ms. Petralia explicitly acknowledged that Kabbage is the direct lender in transactions involving Celtic Bank.

58.     As further evidence of the sham, each loan made to Plaintiffs was titled "Kabbage Business Loan Agreement," and Kabbage—*not* Celtic—bore the risk of loss on each.

59.     Moreover, in the origination, execution, and financing of the loans, Plaintiffs at all times dealt exclusively with Kabbage.

60.     In fact, from the inception of the loans, Plaintiffs were directed to make payments directly to Kabbage, and to provide all notices under the loans to Kabbage.

61.     Plaintiffs had absolutely no dealings of any kind with Celtic Bank on any of these loan transactions.

## The Criminal RICO Enterprise

62.     Since at least March 2014 and continuing through the present, the members of the Enterprise have had ongoing relations with each other through common control/ownership, shared personnel and/or one or more contracts or agreements relating to and for the purpose of originating, underwriting, servicing and collecting upon unlawful debt issued by the Enterprise to small businesses throughout the United States, including Plaintiffs and the Class Members.

**A.     Each Member's Role in the Enterprise.**

63.     The Enterprise has organized itself into a cohesive group with specific and assigned responsibilities and a command structure to operate as a unit in order to accomplish the common goals and purposes of collecting upon unlawful debts including as follows:

**a)     Defendant Frohwein**

64.     Frohwein is the co-founder and Chief Executive Officer of Kabbage.  Together with Defendant Petralia, Frohwein is responsible for the day-to-day operations of the Enterprise and has final say on all business decisions of the Enterprise including, without limitation, which usurious loans the Enterprise will fund, how such loans will be funded, which of Investors will

fund each loan and the ultimate payment terms, amount and period of each usurious loan, including the loans extended to Plaintiffs and the Class Members.  Frohwein participated in, oversaw and ultimately approved the rent-a-bank scheme used to transact each of the loans extended to Plaintiffs and the Class Members.

65.     In his capacity as one of the day-to-day leaders of the Enterprise, Frohwein, together with Petralia, is responsible for creating, approving and implementing the policies, practices and instrumentalities used by the Enterprise to accomplish its common goals and purposes including: (i) the rent-a-bank scheme at issue; (ii) the method and manner used by the Enterprise to attempt to avoid applicable usury laws; (iii) the method and manner of the Enterprise's collection of an unlawful debt; and (iv) the financing of the Enterprise.  All such forms were used to make and collect upon the unlawful loans including, without limitation, the loans extended to Plaintiffs and the Class Members.

66.     Frohwein has also taken actions and, directed other members of the Enterprise to take actions necessary to accomplish the overall goals and purposes of the Enterprise including directing the affairs of the Enterprise, funding the Enterprise, soliciting and recruiting members of the Enterprise, directing members of the Enterprise to collect upon the unlawful loans and executing legal documents in support of the Enterprise.

67.     Frohwein has ultimately benefited from the Enterprise's funneling of the usurious loan proceeds to Kabbage, Celtic Bank, TBF, and Petralia.

       **b)     Defendant Petralia**

68.     Petralia is the co-founder and Chief Financial Officer of Kabbage.  Together with Frohwein, Petralia is responsible for the day-to-day operations of the Enterprise and has final say on all business decisions of the Enterprise including, without limitation, which usurious loans the

Enterprise will fund, how such loans will be funded, which of the Investors will fund each loan and the ultimate payment terms, amount and period of each usurious loan. Petralia participated in, oversaw and ultimately approved the rent-a-bank scheme used to transact each of the loans extended to Plaintiffs and the Class Members.

69.     In her capacity as one of the day-to-day leaders of the Enterprise, Petralia, together with Frohwein, is responsible for creating, approving and implementing the instrumentalities used by the Enterprise to accomplish its common goals and purposes including: (i) the rent-a-bank scheme at issue; (ii) the method and manner used by the Enterprise to attempt to avoid applicable usury laws; (iii) the method and manner of the Enterprise's collection of an unlawful debt; and (iv) the financing of the Enterprise. All such forms were used to make and collect upon the unlawful loans including, without limitation, the loans extended to Plaintiffs and the Class Members.

70.     Petralia has also taken actions and, directed other members of the Enterprise to take actions, necessary to accomplish the overall goals and purposes of the Enterprise including personally marketing the unlawful loans through numerous personal appearances at trade shows, radio shows, and media interviews.

71.     Petralia has ultimately benefited from the Enterprise's funneling of the usurious loan proceeds to Kabbage, Celtic Bank, TBF, and Frohwein.

### c)     Defendant Kabbage

72.     Kabbage is organized under the laws of Georgia and maintains officers, books, records, and bank accounts independent of Celtic Bank, and TBF.

73.     Directly and through Frohwein, Petralia and its other agent employees, Kabbage has been an active participant and central person in the operation and management of the Enterprise and its affairs, and in the orchestration, perpetration, and execution of the Enterprise's collection

of unlawful debts.  Kabbage has been and continues to be responsible for: (i) entering into contracts with brokers to solicit borrowers for the Enterprise's usurious loans and participation agreements with Investors to fund the usurious loans; (ii) pooling the funds of Investors in order to fund each usurious loan; (iii) underwriting the usurious loans and determining the ultimate rate of usurious interest to be charged under each loan; (iv) entering into the loans on behalf of the Enterprise; (v) servicing the usurious loans; and (vi) setting up and implementing the ACH withdrawals used by the Enterprise to collect upon the unlawful debt.

74.     In this case, Kabbage: (i) solicited borrowers, including Plaintiffs and other Class Members; (ii) pooled funds from Investors to fund the loans; (iii) underwrote the loans; (iv) entered into the loans; and (v) collected upon the unlawful debt evidenced by the loans by effecting daily ACH withdrawals from the bank accounts of Plaintiffs and the Class Members.

75.     Kabbage has ultimately benefited from the Enterprise's funneling of the usurious loan proceeds to Celtic Bank, TBF, Frohwein and Petralia.

### d)     Non-Party Celtic Bank

76.     Celtic Bank is organized under the laws of Utah and maintains officers, books, records, and bank accounts independent of Kabbage, Celtic Bank and TBF.

77.     Directly and through its other agent employees, Celtic Bank has been an active participant and central person in the operation and management of the Enterprise and its affairs, and in the orchestration, perpetration, issuance, execution and collection of the Enterprise's unlawful debts.  Celtic Bank has been and continues to be responsible for: (i) acting as the front for the issuer of each of the loans; (ii) acting as the front for the funder of each of the loans; (iii) acting as the front for the underwriting of each of the loans; and (iv) acting as the front for collecting upon each of the loans.

78.     In this case, Celtic Bank allowed the Enterprise to use its name as the party: (i) issuing the loans; (ii) funding the loans; (iii) underwriting the loans; and (iv) entering into the loans, including the loans to Plaintiffs and other Class Members.

79.     Celtic Bank has ultimately benefited from the Enterprise's funneling of the usurious loan proceeds to Kabbage, TBF, Frohwein and Petralia.

**e)     Non-Party TBF**

80.     TBF is a debt collection company.  It is organized under the laws of Illinois and maintains officers, books, records, and bank accounts independent of Kabbage and Celtic Bank.

81.     Upon default of a borrower's obligations under the usurious loan agreements and in furtherance of the Enterprise's goal of collecting upon the unlawful debt, at the Defendants' direction, TBF collects upon the unlawful debts.

82.     In furtherance of the Enterprise's goal of collecting upon the unlawful debt, TBF has filed numerous lawsuits to collect upon the unlawful debts of the Enterprise.

83.     TBF has ultimately benefited from the Enterprise's funneling of the usurious loan proceeds to Kabbage, Celtic Bank, Frohwein and Petralia.

**B.     Interstate Commerce**

84.     Members of the Enterprise maintain offices in Georgia, Illinois and Utah and use personnel in these offices to originate, underwrite, fund, service and collect upon the usurious loans made by the Enterprise to entities in California, Colorado, Massachusetts, and New York, including Plaintiffs and the Class Members, and throughout the United States via extensive use of

interstate emails, mail, wire transfers and bank withdrawals processed through an automated clearing house.

85.     In the present case, all communications between the members of the Enterprise, Plaintiffs and the Class Members were by interstate email and mail, wire transfers or ACH debits and other interstate wire communications. Specifically, the Enterprise used interstate emails to originate, underwrite, service and collect upon the loans, fund the advances under each of the loans and collect the payments via interstate electronic ACH debits.

86.     In addition, at the direction of Kabbage, each of the loans was executed in states outside of Georgia, and original copies of the loans were transmitted from Georgia.

**C.     Conducting Affairs through a Pattern of Racketeering.**

87.     Defendants' conduct constitutes "fraud by wire" within the meaning of 18 U.S.C. 1343 which is "racketeering activity" as defined by 18 U.S.C. 1961(1).  Its repeated and continuous use of such conduct to participate in the affairs of the Enterprise constitutions a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

**D.     Conducting Affairs Through the Collection of Unlawful Debt.**

88.     Defendants conducted the affairs of the Enterprise or participated in the affairs of the Enterprise, directly or indirectly, though the collection of this unlawful debt in violation of 18 U.S.C. 1962(c).

89.     Specifically, Defendants obtained Plaintiffs' authorization to electronically withdraw payments on an unlawful debt from Plaintiffs' bank accounts.

90.     Upon receipt of such authorization, Defendants did, in fact, make the daily withdrawals required by the loans.

91.     When Plaintiffs could no longer make the daily payments required under the loans, Defendants made numerous interstate phone calls to collect upon the unlawful debt.

**The Representative Class Action Plaintiffs**

92.     Plaintiffs are small businesses and their individual owners.

93.     Plaintiffs Bright Kids NYC and Bige Doruk entered into at least twelve Business Loan Agreements with Defendants on December 31, 2014, January 19, 2015, February 16, 2015, April 7, 2015, May 3, 2015, May 18, 2015, July 27, 2015, August 21, 2015, September 21, 2015, October 30, 2015, November 30, 2015 and February 7, 2016.

94.     The interest rates charged were in excess of 25%.

95.     The interest rate for each of the loans was in excess of the maximum legal rate permitted under the laws of New York.

96.     Plaintiffs Bright Kids Chicago and Ib Olsen entered into at least nine Business Loan Agreements with Defendants on May 28, 2014, February 16, 2015, April 6, 2015, May 4, 2015, June 2, 2015, June 27, 2015, August 21, 2015, November 2, 2015, and December 2, 2015.

97.     The interest rates charged were in excess of 25%.

98.     The interest rate for each of the loans was in excess of the maximum legal rate permitted under the laws of New York.

99.     Plaintiffs DBR Constructions and Julie Cox entered into at least three Business Loan Agreements with Defendants on October 30, 2017, April 26, 2018, and August 16, 2018.

100.    The interest rates charged were in excess of 10%.

101.    The interest rate for each of the loans was in excess of the maximum legal rate permitted under the laws of California.

102.     Plaintiffs Mike's Auto Service, Inc. and Michael L. Pederson entered into at least six Business Loan Agreements with Defendants on September 9, 2015, November 18, 2015, January 13, 2016, February 10, 2016, March 1, 2016, and March 28, 2016.

103.     The interest rates charged were in excess of 20%.

104.     The interest rate for each of the loans was in excess of the maximum legal rate permitted under the laws of Massachusetts.

105.     Plaintiffs Beautiful Brands and Marcia Van Camp entered into at least nine Business Loan Agreements on October 27, 2016, October 25, 2017, January 25, 2018, March 25, 2018, April 29, 2018, July 6, 2018, July 25, 2018, August 10, 2018 and August 19, 2018.

106.     The interest rates charged were in excess of 20%.

107.     The interest rate for each of the loans was in excess of the maximum legal rate permitted under the laws of Massachusetts.

108.     Plaintiffs The Cedars of Lebanon, LLC and Theodore Monsour, II entered into at least two Business Loan Agreements on April 16, 2018 and June 26, 2018.

109.     The interest rates charged were in excess of 45%.

110.     The interest rate for each of the loans was in excess of the maximum legal rate permitted under the laws of Colorado.

111.     While those loans purported to be from Celtic, Kabbage in fact provided the marketing, origination, underwriting, approval, funding, and servicing for each of the loans.

112.     The loans were applied for, executed and transacted in California, Colorado, Massachusetts and/or New York.

113.     The agreements involve California, Colorado, Massachusetts and/or New York businesses and residents.

114.    The loans were fully funded in California, Colorado, Massachusetts and/or New York.

115.    The loan payments were electronically debited from a California, Colorado, Massachusetts and/or New York bank account.

116.    In addition to these central contacts, the criminal activity and financial harm was directed and felt wholly within California, Colorado, Massachusetts and/or New York.

117.    Furthermore, each of these loan transactions violated the strong public policy of California, Colorado, Massachusetts and/or New York.

118.    The loans violated Stats. 1919, p. lxxxiii, § 2; and Stats. 1919, p. lxxxiii, § 3 and Article XV, § 1 of the California Constitution; C.R.S. 18-15-104(1); Colo. Rev. Stat. Ann. § 18-15-104; Mass. Gen. Law. c. 271, § 49; and N.Y. Penal Law § 190.40.

119.    As New York courts have repeatedly explained:

> [U]sury laws are a declaration of this State's public policy. The First Department has characterized usury as a question of supervening public policy. *See Guerin v. New York Life Ins. Co.*, 271 AD 110, 62 N.Y.S.2d 805 (1st Dept 1946). The Court of Appeals has stated in *Schneider v Phelps* [41 NY2d 238, 243, 359 N.E.2d 1361, 391 N.Y.S.2d 568 (1977)], "[the] purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation." Further, it has been reasoned from these cases that "the policy underlying our State's usury laws is in fact of a fundamental nature."

*Clever Ideas, Inc. v 999 Rest. Corp.*, 2007 WL 3234747 (N.Y. Sup. Ct. Oct. 12, 2007); *see also Madden v. Midland Funding, LLC*, 2017 U.S. Dist. LEXIS 27109, *28-29 (S.D.N.Y. Feb. 27, 2017) ("A number of cases have applied New York law — despite the parties' choice of another forum's law — because New York's usury prohibition constitutes a fundamental public policy.") (citing *Am. Equities Grp.*, 2004 U.S. Dist. LEXIS 6970, 2004 WL 870260, at *8 ("New York has a strong public policy against interest rates which exceed 25%, which policy must be enforced."));

*In re McCorhill Publ'g, Inc.*, 86 B.R. 783, 793 (Bankr. S.D.N.Y. 1988) (holding that enforcing New Jersey law would violate New York's "strong public policy against interest rates which exceed 25%, which policy must be enforced"); *Assih*, 893 N.Y.S.2d at 446 ("New York has a strong public policy against interest rates which are excessive and this is a policy the courts must enforce."); *N. Am. Bank, Ltd. v. Schulman*, 474 N.Y.S.2d 383, 387 (N.Y. Sup. Ct. 1984) ("[T]he policy underlying our state's usury laws is in fact of a fundamental nature."); *Guerin v. N.Y. Life Ins. Co.*, 62 N.Y.S.2d 805, 810 (1st Dep't 1946) ("Usury is a question of supervening public policy and relates to charges which are in themselves prohibited.").

## CLASS ALLEGATIONS

120.     Plaintiffs and the putative Class Members repeat and re-allege the allegations of each of the foregoing paragraphs.

121.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

122.     Plaintiff Julie Cox d/b/a DBR Construction brings this action on behalf of itself and the following classes and subclasses of similarly situated persons:

**California Merchant Class:** All persons residing in, headquartered in, or with a principal place of business in the State of California who, on or after October 4, 2015, entered into a Kabbage Business Loan Agreement and paid money pursuant to that Agreement.

123.     Plaintiff Cox brings this action on behalf of herself and the following classes of similarly situated persons:

**California Principal Class:** All citizens of the State of California who were designated as Principal on any Kabbage Business Loan Agreement pursuant to which money was paid on or after October 4, 2015.

124.     Plaintiff The Cedars of Lebanon brings this action on its behalf and on behalf of the following class of similarly situated businesses:

**Colorado Merchant Class:** All merchants residing in, headquartered in, or with a principal place of business in the State of Colorado that, on or after October 4, 2015,

entered into a Kabbage Business Loan Agreement and paid money pursuant to that Agreement.

**Three-Year Colorado Merchant Subclass:**   All merchants residing in, headquartered in, or with a principal place of business in the State of Colorado that, on or after October 4, 2016, entered into a Kabbage Business Loan Agreement and paid money pursuant to that Agreement.

125.    Plaintiff Theodore Monsour II brings this action on his behalf and on behalf of the following class of similarly situated persons:

**Colorado Principal Class**: All individual citizens of the State of New York who were designated as Principal on any Kabbage Business Loan Agreement pursuant to which money was paid on or after October 4, 2015.

**Three-Year Colorado Principal Subclass**: All individual citizens of the State of New York who were designated as Principal on any Kabbage Business Loan Agreement pursuant to which money was paid on or after October 4, 2016.

126.    Plaintiffs Mike's Auto and Beautiful Brands bring this action on their behalf and on behalf of the following class of similarly situated businesses:

**Massachusetts Merchant Class:**   All merchants residing in, headquartered in, or with a principal place of business in the Commonwealth of Massachusetts that, on or after October 4, 2015, entered into a Kabbage Business Loan Agreement and paid money pursuant to that Agreement.

127.    Plaintiffs Michael Pedersen and Marcia Van Camp bring this action on their behalf and on behalf of the following class of similarly situated persons:

**Massachusetts Principal Class:**   All individual citizens of the Commonwealth of Massachusetts who were designated as Principal on any Kabbage Business Loan Agreement pursuant to which money was paid on or after October 4, 2015.

128.    Plaintiffs Bright Kids NYC and Bright Kids Chicago bring this action on their behalf and on behalf of the following class of similarly situated businesses:

**New York Merchant Class:**   All merchants residing in, headquartered in, or with a principal place of business in the State of New York that, on or after October 4, 2013, entered into a Kabbage Business Loan Agreement and paid money pursuant to that Agreement.

**Six-Year New York Merchant Subclass:**   All merchants residing in, headquartered in, or with a principal place of business in the State of New York that, on or after October 4, 2013, entered into a Kabbage Business Loan Agreement and paid money pursuant to that Agreement.

129.    Plaintiffs Bige Doruk and Ib Olsen bring this action on their behalf and on behalf of the following class of similarly situated persons:

**New York Principal Class:**  All individual citizens of the State of New York who were designated as Principal on any Kabbage Loan Agreement pursuant to which money was paid on or after October 4, 2015.

**Six-Year New York Principal Subclass:**  All individual citizens of the State of New York who were designated as Principal on any Kabbage Loan Agreement pursuant to which money was paid on or after October 4, 2013.

130.    The California Merchant Class, the California Principal Class, the Colorado Merchant Class, the Colorado Principal Class, the Three-Year Colorado Merchant Class, the Three-Year Colorado Principal Class, the Massachusetts Merchant Class, the Massachusetts Principal Class, the New York Merchant Class, and the New York Principal Class, the Six-Year New York Merchant Class, and the Six-Year New York Principal Class are collectively referred herein as the "Class Members."

The following people are excluded from the classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest along with their current and former employees, officers, and directors; (3) persons who properly execute and timely file a request for exclusion from the classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise waived; (5) Plaintiffs' and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

131.   **Ascertainability:** Although Plaintiffs do not yet possess a list of potential class members, publicly available information and Defendants' business records will allow for the administratively feasible identification of all class members.

132.   **Numerosity:**  The exact number of members in the classes is not currently known to Plaintiffs, but individual joinder in this case is impracticable.  On information and belief, each of the classes and subclasses is likely to number several hundred, if not several thousand, members.

133.   **Commonality Questions and Community of Interest**: There are many questions of law and fact common to the claims of Plaintiffs and the proposed members of the classes, and those questions predominate over any questions that may only affect individual members. Common questions for the classes include but are not limited to the following:

        **a)**      Whether the loans at issue are usurious under applicable state law;

        **b)**      Whether the loans at issue are contrary to public policy;

        **c)**      Whether Defendants made deceptive, misleading, or false representations in connection with the loans;

        **d)**      Whether Plaintiffs and the classes and the subclasses may recover money paid to Defendants pursuant to any of the loans;

134.   **Typicality:** Plaintiffs' claims are typical of the claims of the members of the classes and subclasses.  Plaintiffs sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiffs and the classes and subclasses.

135.   **Adequate Representation**: Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the classes and subclasses, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the classes, and Defendants have no defenses unique to Plaintiffs.

Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the classes, and they have the resources necessary to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the classes or subclasses.

## FIRST CAUSE OF ACTION

### Usury

### (On Behalf of All Plaintiffs and Class Members)

136.    Plaintiffs and the putative Class Members repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

137.    Plaintiffs bring this cause of action individually and on behalf of the Putative Class Members against all Defendants.

138.    Defendants have devised and engaged in a scheme to fund, issue, and collect usurious loans through a rent-a-bank scheme.

139.    Plaintiffs have taken usurious loans from Defendants and the individual Plaintiffs were forced to personally guarantee these debts.

140.    Defendants are not exempt from state usury laws, nor are the transactions that are the subject of this action exempt from state usury laws.

141.    The interest charged by Defendants in connection with these transactions was in excess of the maximum interest rate permitted by Stats. 1919, p. lxxxiii, § 2; and Stats. 1919, p. lxxxiii, § 3 and Article XV, § 1 of the California Constitution; C.R.S. 18-15-104(1); Mass. Gen. Law. c. 271, § 49; Colo. Rev. Stat. Ann. § 5-12-107(2)(a); and N.Y. Penal Law § 190.40.

142.    Plaintiffs have in fact paid Defendants interest in excess of the maximum interest rate permitted by Stats. 1919, p. lxxxiii, § 2; and Stats. 1919, p. lxxxiii, § 3 and Article XV, § 1 of the California Constitution; C.R.S. 18-15-104(1); Mass. Gen. Law. c. 271, § 49; Colo. Rev. Stat. Ann. § 5-12-107(2)(a); and N.Y. Penal Law § 190.40.

143.    Defendants knowingly and willfully entered into the loans with usurious intent.

## SECOND CAUSE OF ACTION

### RICO, 18 U.S.C. § 1962(c)

**(On Behalf of Plaintiffs and Class Members, except for the Six-Year New York Merchant Subclass, and the Six-Year New York Principal Subclass)**

144.    Plaintiffs and the putative Class Members repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

145.    Plaintiffs bring this cause of action individually and on behalf of the Putative Class Members against all Defendants.

146.    At all relevant times, Defendants conducted and/or participated in the conduct of the Enterprise through a pattern of illegal activities to carry out the common purpose of the Enterprise, i.e. soliciting, funding, servicing and collecting upon usurious loans that charge interest at more than the enforceable rate under the laws of California, Colorado, Massachusetts, and New York and employing a "rent-a-bank" scheme with Celtic Bank and the other Defendants to evade the criminal usury laws of states throughout the country.

147.    The Defendants' predicate acts of racketeering under 18 U.S.C. § 1961(1) include, but are not limited to, the violation of the state criminal usury laws of California, Colorado, Massachusetts, and New York. *See* 1919, p. lxxxiii, § 2; and Stats. 1919, p. lxxxiii, § 3 and Article XV, § 1 of the California Constitution; C.R.S. 18-15-104(1); Colo. Rev. Stat. Ann. § 18-15-104; Mass. Gen. Law. c. 271, § 49; and N.Y. Penal Law § 190.40.

148.    Kabbage, Celtic Bank, TBF, Frohwein, and Petralia are "persons" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c) in that each is either an individual, corporation or limited liability company capable of holding a legal interest in property.

149.    At all relevant times, Kabbage, Celtic Bank, TBF, Frohwein, and Petralia were, and are, persons that exist separate and distinct from the Enterprise.

150.    Kabbage, Celtic Bank, TBF, Frohwein, and Petralia, constitute an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

151.    Kabbage, Celtic Bank, TBF, Frohwein, and Petralia are a group of persons that are associated-in-fact for the common purpose of carrying on an ongoing unlawful enterprise. Specifically, the Enterprise has a common goal of soliciting, funding, servicing and collecting upon usurious loans that charge interest at more than the enforceable rate under the laws of California, Colorado, Massachusetts, and New York and to hide its criminal activities, Kabbage entered into a criminal enterprise known as a "rent-a-bank" scheme with Celtic Bank and the other defendants.

152.    The debt, including such debt evidenced by the Agreements, constitutes unlawful debt within the meaning of 18 U.S.C. § 1962(c) and (d) because (i) it violates applicable criminal usury statutes and (ii) the rates are more than the legal rate permitted under of the maximum interest rate permitted by Stats. 1919, p. lxxxiii, § 2; and Stats. 1919, p. lxxxiii, § 3 and Article XV, § 1 of the California Constitution; C.R.S. 18-15-104(1); Colo. Rev. Stat. Ann. § 18-15-104; Mass. Gen. Law. c. 271, § 49; and N.Y. Penal Law § 190.40.

153.    The Enterprise has organized itself into a cohesive group with specific and assigned responsibilities and a command structure to operate as a unit in order to accomplish the common goals and purposes of collecting upon unlawful debts.

154.    The Enterprise is engaged in interstate commerce and uses instrumentalities of interstate commerce in its daily business activities.

155.    Defendants conducted the affairs of the Enterprise or participated in the affairs of the Enterprise, directly or indirectly, though a pattern of racketeering activity (wire fraud) in violation of 18 U.S.C. 1962(c).

156.    Defendants' conduct constitutes "fraud by wire" within the meaning of 18 U.S.C. 1343 which is "racketeering activity" as defined by 18 U.S.C. 1961(1).  Its repeated and continuous use of such conduct to participate in the affairs of the Enterprise constitutions a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

157.    The interest rates charged by the loans were more than twice the criminal usury threshold of California and Massachusetts.

158.    The loans constitute unlawful debt within the meaning of 18 U.S.C. 1962(c) because (1) they violate applicable criminal usury statutes, and (2) the rates are more than twice the legal rate.

159.    Plaintiffs and the Class Members have and will continue to be injured in their business and property by reason of the Enterprise's violations of 18 U.S.C. § 1962(c), in an amount to be determined at trial.

160.    The injuries to the Plaintiffs and the putative Class Members directly, proximately, and reasonably foreseeably resulting from or caused by these violations of 18 U.S.C. § 1962(d) include, but are not limited to, millions of dollars in improperly collected criminally usurious loan payments.

161.    Plaintiffs and the Class Members have also suffered damages by incurring attorneys' fees and costs associated with exposing and prosecuting Defendants' criminal activities.

162.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the Class Members are entitled to treble damages, plus costs and attorneys' fees from Defendants.

### THIRD CAUSE OF ACTION

### RICO Conspiracy, 18 U.S.C. § 1962(d)

**(On Behalf of Plaintiffs and Class Members, except for the Six-Year New York Merchant Subclass, and the Six-Year New York Principal Subclass)**

163.     Plaintiffs and the putative Class Members repeat and re-allege the allegations of each of the foregoing paragraphs.

164.     Plaintiffs bring this cause of action individually and on behalf of the Putative Class Members against all Defendants.

165.     Defendants have unlawfully, knowingly, and willfully, combined, conspired, confederated, and agreed together to violate 18 U.S.C. § 1962(c) as describe above, in violation of 18 U.S.C. § 1962(d).

166.     By and through each of the Defendants' business relationships with one another, their close coordination with one another in the affairs of the Enterprise, and frequent email communications among the Defendants concerning the underwriting, funding, servicing and collection of the unlawful loans, including the loans with Plaintiffs and the Class Members, each Defendant knew the nature of the Enterprise and each Defendant knew that the Enterprise extended beyond each Defendant's individual role.   Moreover, through the same connections and coordination, each Defendant knew that the other Defendants were engaged in a conspiracy to collect upon unlawful debts in violation of 18 U.S.C. § 1962(c).

167.     Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to collect upon unlawful debts, including the loans with Plaintiffs and the Class Members, in violation of 18 U.S.C. § 1962(c).   In

particular, each Defendant was a knowing, willing, and active participant in the Enterprise and its affairs, and each of the Defendants shared a common purpose, namely, the orchestration, planning, preparation, and execution of the scheme to solicit, underwrite, fund and collect upon unlawful debts, including the loans.

168.    As more fully described above, Defendants took actions in furtherance of the conspiracy, i.e. soliciting, funding, servicing and collecting upon usurious loans that charge interest at more than the enforceable rate under the laws of California, Colorado, Massachusetts, and New York and employing a "rent-a-bank" scheme with Celtic Bank and the other defendants to evade the criminal usury laws of states throughout the country.

169.    The participation and agreement of each of Defendant was necessary to allow the commission of this scheme.

170.    Plaintiffs and the Class Members have been and will continue to be injured in their business and property by reason of the Defendants' violations of 18 U.S.C. § 1962(d), in an amount to be determined at trial.

171.    The injuries to the Plaintiffs and the Class Members directly, proximately, and reasonably foreseeably resulting from or cause these violations of 18 U.S.C. § 1962(d) include, but are not limited to, millions of dollars in improperly collected loan payments and the unlawful entry and enforcement of judgments.

172.    Plaintiffs and the Class Members have also suffered damages by incurring attorneys' fees and costs associated with exposing and prosecuting Defendants' criminal activities.

173.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble damages, plus costs and attorneys' fees from the Defendants.  The Court should also enter such equitable relief as it

deems just and proper to preclude the Defendants from continuing to solicit, fund and collect upon

unlawful debt, including the loans issued to Plaintiffs and the Class Members

### FOURTH CAUSE OF ACTION

**California Business & Profession Code § 17500**

**(On Behalf of Plaintiffs DBR Construction, Julie Cox, the California Merchant Class, and the California Principal Class)**

174.     Plaintiffs and the Putative Class Members repeat and re-allege the allegations of each of the foregoing paragraphs.

175.     Plaintiffs bring this cause of action individually and on behalf of the California Merchant and the California Principal Classes against all Defendants.

176.     Defendants are businesses disseminating advertising in California through their website and other forms of social media.

177.     False Advertising Law, Business and Professions Code, § 17500, et seq. ("FAL") prohibits false and misleading statements in advertising.

178.     A violation of the FAL is a misdemeanor, punishable by fine or imprisonment.

179.     Defendants, directly or indirectly as part of a larger criminal conspiracy, participated in advertising the Kabbage Business Loan Agreements in a false and misleading manner which included both material misrepresentations and omissions.

180.     The misrepresentations and omissions included, among other things, stating that: (1) Celtic Bank was the lender; (2) the loans were not usurious; and (3) deceptively disclosing and/or failing to disclose the interest rate.

181.     Kabbage also falsely designated the origin of the loans in its commercial advertising and promotion as being loans from Celtic Bank.

182.    Defendants knew, or by the exercise of reasonable diligence should have known, that the above statements were untrue or misleading, and/or omitted to state the truth about the Kabbage Loan program.

183.    Plaintiffs relied upon and were actually deceived by the misrepresentations that Kabbage made for itself and as a part of a larger criminal conspiracy with the other Defendants.

184.    The misrepresentations also are likely to deceive other California small business owners.

185.    The Defendants are directly and/or vicariously liable for the harm suffered by the Plaintiffs and other California business who were similarly deceived.

186.    As a direct and proximate result of each of these loans, Julie Cox d/b/a DBR Construction and all members of the Classes suffered indivisible injury through loss of goodwill, lost profits, reputational harm and devaluation of its business.

187.    As a direct and proximate result of each of these loans, Julie Cox d/b/a DBR Construction and all members of the California Merchant and the California Principal Classes suffered indivisible injury by having its other business loans being called in from legitimate banks, deterioration of its credit profile, and the inability to secure financing to obtain needed inventory and pay its vendors.

188.    Alternatively, Julie Cox d/b/a DBR Construction and all members of the California Merchant and the California Principal Classes seek to disgorge the profits realized by Defendants from the illegal loan transactions.

## FIFTH CAUSE OF ACTION

### California Business & Profession Code §§ 17200, et seq.

### (On Behalf of Plaintiffs DBR Construction and Julie Cox, the California Merchant Class, and the California Principal Class)

189.    Plaintiffs and Putative Class Members repeat and re-allege the allegations of each of the foregoing paragraphs.

190.    Plaintiffs DBR Construction and Julie Cox bring this cause of action individually and on behalf of the California Merchant Class and the California Principal Class against all Defendants.

191.    California Business & Profession Code §§ 17200, et seq. ("UCL") prohibits "unfair competition" in the form of any unlawful, unfair, or fraudulent business act or practice.

192.    Since at least March 2014, Defendants engaged in an unlawful business practices as prohibited by the UCL, and as further described in this Complaint:

193.    Violating Cal. Const. Art. XV § 1 by charging interest rates in excess of 10% or 5% plus the applicable Federal Reserve rate;

194.    Violating 18 U.S.C. § 1343 by furthering their scheme to defraud Plaintiffs by (i) making and receiving wire transfers, and (ii) using wires to transmit fraudulent communications;

195.    Violating 18 U.S.C. § 1692(c) by conducting the Kabbage Enterprise through a pattern of racketeering and the collection of an unlawful debt; and

196.    Violating Cal. Bus. & Prof. Code § 17500.

197.    Additionally, Defendants engaged in unfair and fraudulent conduct by making false and misleading statements when advertising the Kabbage Business Loan Agreements.

198.    Specifically, Kabbage as part of its commercial advertising and promotion misrepresented the nature, characteristics and qualities of its loans.

199.    Kabbage's misrepresentations included, among other things, stating that: (1) Celtic Bank was the lender; (2) the loans were not usurious; and (3) deceptively disclosing and/or failing to disclose the interest rate.

200.    Kabbage also falsely designated the origin of the loans in its commercial advertising and promotion as being a loan from Celtic Bank.

201.    Each of these representations was literally false.

202.    Kabbage and Celtic Bank knew that these representations were false at the time they were made.

203.    Kabbage's misrepresentations were material and actually did influence Julie Cox d/b/a DBR Construction's decision to enter into the loan agreements.

204.    The misrepresentations also are likely to influence the purchasing decisions of all members of the California Merchant and the California Principal Classes.

205.    Defendants knew that Kabbage's misrepresentations have the tendency to deceive small businesses in need of financing and actually deceived Julie Cox d/b/a DBR Construction.

206.    Defendants knew that Kabbage was placing, its false and misleading advertising in interstate commercial both through its website and other forms of social media.

207.    Defendants, directly or indirectly, participated in the false advertisements for their collective benefit and as part of a larger criminal conspiracy to harm Plaintiffs and all members of the California Merchant and the California Principal Classes.

208.    Defendants engaged in these actions to further their business activities, i.e., the issuing, and collection of debts.

209.    In addition to their falsity and unlawfulness, Defendants' loans to Plaintiffs and the Classes charged unconscionably high interest rates. Defendants' loans were made with the

knowledge that many, if not most, of the borrowers would be unable to pay the excessive accrued interest, and would be forced to continually take out further loans until ultimately defaulting and triggering the recourse mechanisms available under the loan agreements.

210.    Defendants' practices offend California's established public polices, and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

211.    Plaintiffs seek public injunctive relief to benefit the general public directly by bringing an end to Defendants' unlawful business practices which threaten future injury to the general public.  Specifically, an injunction requiring Kabbage to immediately cease entering into usurious loans that charge interest at more than the enforceable rate under the laws of California would benefit the public at large because the public could then not be charged an unconscionable and unlawful APR by Defendants.

212.    As a direct and proximate result of Defendants violations of the UCL, Plaintiffs and all members of the California Merchant and the California Principal Classes suffered, and continue to suffer, substantial injury to his business and/or property as they were forced to pay usurious amounts of interest and has lost, and will continue to lose, customers, profits, goodwill, and business value.

### SIXTH CAUSE OF ACTION

**California Financing Law Code §§ 22000, et seq.**

**(On Behalf of Plaintiffs DBR Construction and Julie Cox, the California Merchant Class, and the California Principal Class)**

213.    Plaintiffs and the Putative Class Members repeat and re-allege the allegations of each of the foregoing paragraphs.

214.     Plaintiffs DBR Construction and Julie Cox bring this cause of action individually and on behalf of the California Merchant Class and the California Principal Class against all Defendants.

215.     California Financial Code §§ 22000, et seq. ("Financing Code) prohibits any unlawful, unfair, or fraudulent representation in connection with the making or brokering of a loan.

216.     Since at least March 2014, Defendants willfully and knowingly engaged in an unlawful practices that they knew were prohibited by the Financing Code, and as further described in this Complaint:

    (a)     Acting as a broker for a commercial loan without a license in violation of Fin. Code §§ 22001, 22004 , 22502, 22604, 22502, and 22780;

    (b)     Obtaining an arbitration provision through an unlicensed broker, which renders the arbitration provision void;

    (c)     Acting as a lender for a commercial loan without a license in violation of Fin. Code §§ 22001, 22009, 22502, 22604, 22502, and 22780; and

    (d)     Violating Cal. Bus. & Prof. Code § 17200 making numerous false and misleading representations described supra.

217.     As a direct and proximate result of Defendants' violations of the Financing Law, Plaintiffs and all members of the California Merchant and the California Principal Classes suffered, and continue to suffer, substantial injury to his business and/or property as they were forced to pay usurious amounts of interest and has lost, and will continue to lose, customers, profits, goodwill, and business value.

## SEVENTH CAUSE OF ACTION

### Mass. Gen. Law ch. 93A §§ 2 and 11

**(On Behalf of Plaintiffs Beautiful Brands, Mike's Auto, Marcia Van Camp, Michael Pedersen, the Massachusetts Merchant Class, and the Massachusetts Principal Class)**

218.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

219.    Plaintiffs Beautiful Brands, Mike's Auto, Marcia Van Camp, and Michael Pedersen bring this cause of action individually and on behalf of the Massachusetts Merchant Class and the Massachusetts Principal Class against all Defendants.

220.    Mass. Gen. Laws c. 93A, § 2(a) makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce in Massachusetts.

221.    It is an unfair and deceptive practice under Mass. Gen. Laws c. 93A, § 2(a) for a seller of a product to use advertisements which are untrue, misleading, deceptive, or fraudulent. This includes advertisements which create an over-all misleading impression through the failure to disclose material information.

222.    Defendants engaged, directly or indirectly, in the business of making loans greater than $6,000 to Massachusetts businesses.

223.    In the course of making, servicing, or collecting on loans made to Plaintiffs, Defendants engaged in deceptive business practices in violation of G.L. c. 93A, § 2(a).

224.    Defendants' unfair or deceptive acts or practices include, but are not limited to, the following:

a) Repeatedly or persistently making, servicing, or collecting, or attempting to collect, on loans issued to Plaintiffs without proper license or registration in violation of Massachusetts laws, including G.L. c. 93, § 24A and c. 140, §§ 96 through 114A;

b) Unconscionably making, servicing, or collecting, or attempting to collect, on loans issued to Plaintiffs without appropriate evaluation of Plaintiffs' ability to repay these loans;

c) Advertising the loans using false and misleading statements, including, among other things, stating that: (1) the loans were not usurious; (2) deceptively disclosing and/or failing to disclose the interest rate; and (3) falsely and/or deceptively disclosing the relationship between Kabbage and Celtic Bank.

d) Repeatedly or persistently charging and receiving illegal, usurious, and oppressive interest and fees;

e) Repeatedly misrepresenting to Plaintiffs, expressly and by implication, that the rates of interest being charged on the loans was legal; and

f) Repeatedly misrepresenting to Plaintiffs that Massachusetts law does not apply to the loans.

225.    Defendants conspired with and acted in concert with each other to violate Mass. Gen. L. ch. 271, § 49 and also 940 CMR 6.00 et seq.

226.    Defednants knew or should have known that by making, servicing, or collecting, or attempting to collect on these loans, it engaged in unfair or deceptive acts or practices, in violation of G.L. c. 93A, §§ 2 and 11.

227.    Defendants knew or should have known that its advertisements about the loans were false, misleading or deceptive.

228.    Defendants' violation of Mass. Gen. L. ch. 271, § 49 constitutes a per se violations of Mass. Gen. Law ch. 93A §§ 2 and 11.

229.    Defendants also violated Mass Gen. Law ch. 93A §§ 2 and 11 by including unconscionable and unfair provisions in connection with the loan agreements, which were contracts of adhesion.  Among these unconscionable and unfair provisions, Defendants required Plaintiffs to, among other things:

   a)    Waive the right to a jury trial;

   b)    Waive the right to participate in a class action;

   c)    Waive the right to seek legal redress in their home state;

   d)    Execute a Security Agreement giving Kabbage a UCC lien on all
          of its assets;

   e)    Execute a personal guarantee making the individual owner of the
          business personally liable for any default under the agreement; and

   e)    Waive claims for direct, consequential and punitive damages.

230.    Defendants' conduct was willful, unfair and unlawful.

231.    Defendants willfully and knowingly violated Mass Gen. Law ch. 93A.

232.    Plaintiffs reasonably relied upon Defendants' representations and those representations induced Plaintiffs to enter into the loans.

233.    As a direct and proximate result of each of these loans, Plaintiffs paid Kabbage interest in excess of the 20% maximum interest rate permitted by Massachusetts law.

## EIGHTH CAUSE OF ACTION

### N.Y. Gen. Bus. Law § 349

**(On Behalf of Plaintiffs Bright Kids NYC, Bright Kids Chicago, Bige Doruk, Ib Olsen, the Six-Year New York Merchant Subclass, and the Six-Year New York Principal Subclass)**

234.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

235.    Plaintiffs Bright Kids NYC, Bright Kids Chicago, Bige Doruk, Ib Olsen bring this cause of action individually and on behalf of the New York Merchant Class and the New York Principal Class against all Defendants.

236.    The Kabbage Business Loans involve consumer-oriented transactions because they violate the strong public policy of New York and have an impact upon the public welfare.

237.    Defendants conduct was unlawful and deceptive.

238.    Defendants willfully and knowingly violated General Business Law § 349.

239.    Plaintiffs suffered damages as a direct result of Defendants' unlawful and deceptive acts.

## NINTH CAUSE OF ACTION

### Col. Rev. Stat. § 6-1-105 and 6-113

**(On Behalf of Plaintiffs The Cedars of Lebanon, Theodore Monsour, the Three-Year Colorado Merchant Subclass, and the Three-Year Colorado Principal Subclass Class)**

240.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

241.    Plaintiffs The Cedars of Lebanon and Theodore Monsour bring this cause of action individually and on behalf of the Colorado Merchant Class and the Colorado Principal Class against all Defendants.

242.    Defendants engaged in an unlawful and deceptive trade practice by, in the course of their business, vocation or occupation:

> (a)  Either knowingly or recklessly passing off goods, services, or property as those of another;

> (b)  Either knowingly or recklessly making a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;

> (c)  Either knowingly or recklessly making a false representation as to affiliation, connection, or association with or certification by another; and

> (d)   Using deceptive representations or designations of geographic origin in connection with goods or services;

243.    Defendants willfully and knowingly violated Col. Rev. Stat. § 6-1-105.

244.    Plaintiffs suffered damages as a direct result of Defendants' unlawful and deceptive acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Putative Class Members demand judgment in their favor against Defendants, jointly and severally, and seek an order:

> a)      Certifying the proposed Classes;

> b)      Appointing Plaintiffs as Class Representatives;

> c)      Appointing counsel for Plaintiffs as Class Counsel;

> d)      Permanently enjoining Defendants from engaging in the unlawful practices;

> e)      Awarding Plaintiffs compensatory, direct, and consequential damages, including prejudgment interest, in an amount to be determined a trial;

f)   Awarding treble damages;

g)   Requiring Defendants to pay Plaintiffs' attorneys' fees and costs; and

h)   Granting such other and further relief as is just and proper.

Dated:  October 4, 2019

**WHITE AND WILLIAMS LLP**

Shane R. Heskin, Esq.
7 times Square, Suite 2900
New York, NY 10036
(212) 244-9500 or (215) 864-6329
heskins@whiteandwilliams.com

*Attorneys for All Plaintiffs and Putative
Class Members*

**GUTMAN WEISS, P.C.**
Dov Medinets, Esq.
2276 Sixty-Fifth Street, 2nd Floor
Brooklyn, N.Y. 11204
718.259.2100 Ext. 19 (p)
718.259.2105 (f)
dmedinets@gwpclaw.com

*Attorneys for Plaintiffs Bright Kids NYC,
Bright Kids Chicago, Bige Doru, and Ib
Olsen*